# 12-0746-cr

# United States Court of Appeals

## for the

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

CESAR DIAZ, aka Arambales Diaz,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT

STEPHEN N. PREZIOSI
*Attorney for Defendant-Appellant*
570 Seventh Avenue, 6th Floor
New York, New York 10018
(212) 300-3845

# <u>TABLE OF CONTENTS</u>

**Page**

APPELLATE JURISDICTION ................................................................ 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE ............................................................. 3

<u>STATEMENT OF THE FACTS</u>

    The Indictment ........................................................................ 4

    The Plea Agreement ............................................................... 4

    The District Court's Statements To Mr. Diaz ..................................... 5

    The Sentence ....................................................................... 8

    The Presentence Report ............................................................ 8

THE AMBIGUITIES IN THE PLEA AGREEMENT COUPLED
    WITH THE COMMENTS MADE BY THE COURT AND
    THE ASSISTANT U.S. DISTRICT ATTORNEY RENDERED
    THE SENTENCE OF 19 YEARS CONTRARY TO THE
    REASONABLE UNDERSTANDING AND EXPECTATIONS
    OF THE DEFENDANT .................................................................... 11

        The Terms of the Plea Agreement .............................................. 12

        Comments Made By The Trial Court And Assistant USDA
        Added To The Ambiguity Of The Agreement ............................. 13

        The Plea Agreement Must Be Interpreted Within The Concepts
        Of Contract Law .................................................................... 15

        Ambiguities In The Plea Agreement Must Be Interpreted
        Against The Government And In Favor Of Mr. Diaz ..................... 16

        Mr. Diaz Is Entitled To Specific Performance Of
        The Agreement Under Rules Of Due Process ............................. 18

THE ADDITION OF TWO OFFENSE LEVEL POINTS FOR
RESTRAINT UNDER 2B3.1(b)(4)(B) WAS INAPPROPRIATE,
INAPPLICABLE AND EXCESSIVE AS MR. DIAZ WAS NOT
PRESENT DURING THE ROBBERY AND DID NOT
RESTRAIN ANYONE OR PARTICIPATE IN THE RESTRAINT
OF ANYONE ............................................................................... 21

The Acts Of Mr. Diaz' Coconspirators Were Not Reasonably
Foreseeable ................................................................................ 24

A CRIMINAL HISTORY CATEGORY OF III WAS EXCESSIVE
IN THIS CASE BECAUSE A TOTAL OF FOUR CRIMINAL
HISTORY POINTS OVERREPRESENTS THE DEFENDANT'S
PAST CRIMINAL HISTORY AND MR. DIAZ SHOULD HAVE
BEEN A CRIMINAL HISTORY CATEGORY II ............................ 26

THE SENTENCE IMPOSED ON CESAR DIAZ WAS
UNREASONABLE AND DISPROPORTIONATELY HIGHER
THAN THE SENTENCES RECEIVED BY SIMILARLY
SITUATED CO-DEFENDANTS ........................................................ 29

CONCLUSION ..................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Buckley v. Terhune*, 441 F.3d 688 (9th Cir. 2006) .................................. 17

*Gall v. U.S.*, 552 U.S. 38, 128 S.Ct. 586 (2007)..................................... 30, 31

*In re Altro*, 180 F.3d 372 (2d Cir. 1999) ......................................... 12, 16-17

*Margalli-Olvera v. I.N.S.*, 43 F3d 345 (8th Cir 1994)........................... 19, 20

*Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286
 (2d Cir. 1976) ...................................................................... 18-19

*Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427
 (1971) ..................................................................................... 19

*U.S. v. Carmichael*, 216 F.3d 224 (2d Cir. 2000)................................... 17

*United States v. Alexander*, 869 F.2d 91 (2d Cir. 1989) ........................ 18

*United States v. Anglin*, 169 F.3d 154 (2d Cir. 1999) ............................ 22, 24

*United States v. Badaracco*, 954 F.2d 928 (3rd Cir) ............................... 19

*United States v. Brody*, 808 F.2d 944 (2d Cir. 1986) ............................. 18

*United States v. Byrd*, 413 F.3d 249 (2d Cir. 2005) ............................... 18

*United States v. Canada*, 960 F.2d 263 (1st Cir. 1992).......................... 19

*United States v. Carbone*, 739 F.2d 45 (2d Cir. 1984).......................... 16

*United States v. Cimino*, 381 F.3d 124 (2d Cir. 2004) .......................... 18

*United States v. Clark*, 434 F.3d 684 (4th Cir. 2006).............................. 32

*United States v. Colon*, 220 F.3d 48 (2d Cir. 2000) ............................... 16

*United States v. D'Amico*, 734 F Supp 2d 321 (SDNY 2010) ............... 11, 12

*United States v. DeJesus*, 75 F.Supp.2d 141 (S.D.N.Y. 1999)............... 27

*United States v. Drew*, 200 F.3d 871 (D.C. Cir. 2000) ......................... 24

*United States v. Ferrara*, 954 F.2d 103 (2d Cir. 1992) ........................ 16

*United States v. Fiacco*, 48 Fed.Appx. 356 (2d Cir. 2002) ................... 27

*United States v. Fisher*, 132 F.3d 1327 (10th Cir. 1997) ...................... 22, 23

*United States v. Harvey*, 791 F.2d 294 (4th Cir. 1986) ......................... 11

*United States v. Hayes*, 399 Fed.Appx. 57 (6th Cir. 2010) ................... 23

*United States v. Houston*, 529 F.3d 743 (6th Cir. 2008) ...................... 31

*United States v. Jefferies*, 908 F.2d 1520 (11th Cir. 1990) ................... 13

*United States v. Kurkculer*, 918 F.2d 295 (1st Cir. 1990) ..................... 19

*United States v. Lawlor*, 168 F.3d 633 (2d Cir. 1999) ......................... 18

*United States v. Marcial-Santiago*, 447 F3d 715 (9th Cir 2006) ........... 31

*United States v. McGovern*, 822 F.2d 739 (8th Cir. 1987)..................... 20

*United States v. Padilla*, 186 F.3d 136 (2d Cir. 1999) ......................... 15

*United States v. Palladino*, 347 F3d 29 (2d Cir 2003) .......................... 16, 19

*United States v. Ready*, 82 F.3d 551 (2d Cir. 1996).............................. 11

*United States v. Rewis*, 969 F2d 985 (11th Cir 1992) .......................... 13

*United States v. Riera*, 298 F.3d 128 (2d Cir. 2002) ............................ 15, 16

*United States v. Rivers*, 50 F.3d 1126 (2d Cir. 1995)............................ 27

*United States v. Rodgers*, 101 F3d 247 (2d Cir 1996)........................... 16, 17

*United States v. Roitman*, 245 F3d 124 (2d Cir 2001) ......................... 13

*United States v. Rosario*, 7 F.3d 319 (2d Cir. 1993) ............................ 22

*United States v. Shelton*, 179 Fed.Appx. 809 (3rd Cir) ......................... 19

*United States v. VanDam*, 493 F.3d 1194 (10th Cir. 2007).................... 19

iv

*United States v. Vaval*, 404 F3d 144 (2d Cir 2005)...............................  19

*United States v. Vigers*, 220 Fed.Appx. 265 (5th Cir. 2007)..................  24

*United States v. Walker*, 927 F.2d 389 (8th Cir. 1991) ..........................  20

*United States v. Wallace*, 461 F.3d 15 (1st Cir. 2006) ........................  23

*United States v. Williams*, 524 F.3d 209 (2d Cir. 2008)......................  31

*United States v. Wilson*, 198 F.3d 467 (4th Cir. 1999)..........................  23

**Statutes:**

18 U.S.C. §924 (c)(1)(A)(i) ..................................................  3, 4

18 U.S.C. §924 (c)(1)(A)(ii) ................................................  3, 4

18 U.S.C. §1951(a) ...........................................................  3, 4

18 U.S.C. §1951.................................................................  8

18 U.S.C. §3551 *et seq.* ....................................................  4

18 U.S.C. §3553(a) .......................................  29-30, 31, 34

18 U.S.C. §3553(a)(6) ...................................  30, 31-32, 33

18 U.S.C.A. §3742............................................................  1

28 U.S.C. §1291 ...............................................................  1

**Other Authority:**

U.S.S.G. §1B1.1 et seq. .....................................................  31

U.S.S.G. §1B1.3 Application Notes 2.B................................  25

U.S.S.G. §1B1.3(a)(1)(B) .................................................  24

U.S.S.G. §2B3.1.................................................................  8

U.S.S.G. §2B3.1(7)(C)......................................................  8

U.S.S.G. §2B3.1(b)(4)(B) ........................  2, 3, 9, 21, 23

U.S.S.G. §2X1.1 ............................................................. 8

U.S.S.G. §3B1.1(a) ........................................................ 8

U.S.S.G. §3D1.4 ........................................................... 9

U.S.S.G. §4A1.1(c) ........................................................ 26

U.S.S.G. §4A1.1(d) ........................................................ 10, 26

U.S.S.G. §4A1.3 ........................................................... 27

U.S.S.G. §4A1.3 note 3 .................................................. 26

U.S.S.G. §4A1.19(c) ...................................................... 9

## APPELLATE JURISDICTION

This case involves an appeal after a plea and sentence for conspiracy to commit  and brandishing a firearm during a crime of violence. This Court has appellate jurisdiction under 18 U.S.C.A. § 3742 and 28 U.S.C §1291. This appeal is taken from only the Sentence and not the Judgment of Conviction before the Honorable Sandra J. Feuerstein; Mr. Diaz' plea in this case disposed of all federal charges against him.

<u>STATEMENT OF THE ISSUES</u>

<u>THE AMBIGUITIES IN THE PLEA AGREEMENT COUPLED WITH THE COMMENTS MADE BY THE COURT AND THE ASSISTANT U.S. DISTRICT ATTORNEY RENDERED THE SENTENCE OF 19 YEARS CONTRARY TO THE REASONABLE UNDERSTANDING AND EXPECTATIONS OF THE DEFENDANT</u>

<u>THE ADDITION OF TWO OFFENSE LEVEL POINTS FOR RESTRAINT UNDER 2B3.1(b)(4)(B) WAS INAPPROPRIATE, INAPPLICABLE AND EXCESSIVE AS MR. DIAZ WAS NOT PRESENT DURING THE ROBBERY AND DID NOT RESTRAIN ANYONE OR PARTICIPATE IN THE RESTRAINT OF ANYONE</u>

<u>THE SENTENCE IMPOSED WAS DISPROPORTIONATE TO THE SENTENCES RECEIVED BY CO-DEFENDANTS AND HARSH AND EXCESSIVE VIOLATION OF THE 8TH AMENDMENT</u>

<u>A CRIMINAL HISTORY CATEGORY OF III WAS EXCESSIVE IN THIS CASE BECAUSE A TOTAL OF FOUR CRIMINAL HISTORY POINTS OVERREPRESENTS THE DEFENDANTS PAST CRIMINAL HISTORY AND MR. DIAZ SHOULD HAVE BEEN A CRIMINAL HISTORY CATEGORY II.</u>

## STATEMENT OF THE CASE

On March 14, 2011 Mr. Diaz pleaded guilty to two counts of a seven-count indictment. Count One charged that, from January 2006 to July 2009, he conspired to commit eight Hobbs Act robberies of businesses in New York City and on Long Island (18 U.S.C. 1951(a). Count Two charged the use and brandishing of a firearm in furtherance of the robbery conspiracy, in violation of 18 U.S.C.§ 924 (c)(1)(A)(i,ii).

Mr. Diaz argues four points on appeal. First, Mr. Diaz should be resentenced because the ambiguities in the plea agreement coupled with the statements made by the District Court and the assistant United States District Attorney led Mr. Diaz to believe that his total sentence would be no more than 12 or 13 years. Second, the presentence report and the District Court wrongfully added two offense level points under U.S.S.G. 2B3.1(b)(4)(B) for restraint of a victim when Mr. Diaz was not even present at the scene of the crime and this case should be remanded for resentencing. Third, placing Mr. Diaz in Criminal History Category III overrepresents Mr. Diaz' past criminal history. Fourth, Mr. Diaz' sentence was unreasonable because it was disproportionately higher than the sentences received by similarly situated codefendants.

STATEMENT OF THE FACTS

*The Indictment*

A seven count superseding indictment was filed against Mr. Diaz on February 17, 2011. The indictment charged Mr. Diaz and several other codefendants with four counts of Hobbs Act robberies under 18 U.S.C. 1951(a) and 3551 *et seq.* and three counts of brandishing of a firearm during a crime of violence under 18 U.S.C. 924(c)(1)(A)(i) and (ii). (A8)

*The Plea Agreement*

The plea agreement signed by Mr. Diaz estimated an offense level of 27 and a Criminal History Category of I. The plea agreement specifically states:

*The Guidelines sentence for Count Two is the consecutive mandatory minimum term of imprisonment of 84 months, pursuant to US.S.G. §2K2.4(b). Therefore, the level for Cont One and the Guidelines sentence of Count Two collectively carry a range of imprisonment of 154 – 171 months, assuming that the defendant falls within Criminal History Category I.* (A61)

*Therefore, the level for Count One and the guidelines sentence for Count Two collectively carry a range of imprisonment of 147 – 162 months, assuming that the defendant falls within criminal History Category I.* (A62)

*The defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. §2255 or any other provision the conviction or sentence in the event that the Court imposes a term of imprisonment of 171 months or less.* (A62)

*The District Court's Statements To Mr. Diaz*

On March 11, 2011 Mr. Diaz appeared before the District Court (Feuerstein, Sandra U.S.D.J.) and a discussion was had about the ramifications of going to trial (A14) and the amount of time that Mr. Diaz would serve if he were to plead guilty. (A15).

The District Court along with the assistant U.S. attorney specifically stated to Mr. Diaz as follows (A15):

*THE COURT: The reason is because if in fact you go to trial and if in fact you are convicted, you are facing the possibility of a term of what, Ms. Gatz?*

*MS. GATZ (assistant U.S. attorney): Approximately 40 years.*

*THE COURT: 40?*

*MS. GATZ: Yes*

*THE COURT: 40 years in jail. The government has offered you an agreement where by you would be serving between what?*

*MS. GATZ: I believe it's 12 years, 12 to 13 years.*

*THE COURT: 12 to 13 years. So that's the first thing. The reason we're discussing this now is I'm not in any way trying to dissuade you from going to trial, but I want you to understand the possible sentence that you could receive under the two circumstances; 40 years versus a maximum of 13, correct?*

*MS. GATZ: Yes, Judge.*

Later during that same discussion at (A23)

*THE COURT: So really wouldn't a plea to , for example, the first Hobbs Act violation in count 1 cover both?*

*MS. GATZ: If the defendant allocuted to providing a gun for the robbery of Margarita's Clothing store and driving them there, that would be sufficient for both counts, you Honor.*

*THE COURT: Okay. Fine.*

*THE DEFENDANT: And the offer is how many years if I plead to that?*

*MS. GATZ: Your Honor, the advisory guidelines range is between 12 and 13 years.*

After these conversations on the record between the District Court, Ms. Gatz and Mr. Diaz, the case was adjourned to March 14, 2011, the following Monday, for trial. At 10:00 a.m. Mr. Diaz was again brought before the Honorable Sandra Feuerstein and Mr. Diaz's attorney, Patrick Brackley, promptly informed the Court that Mr. Diaz wished to plead guilty. The following colloquy took place at 10:00 a.m. on March 14, 2011 between the Court and Mr. Diaz:

*(A33-A34)*

*THE COURT: Mr. Diaz, would you please raise your right hand.*

*(the defendant is sworn)*

*THE COURT: Now, the reason that I have placed you under oath is that your attorney has advised me that you wish to enter a plea of guilty pursuant to an agreement with the government. Is that your understanding and is that correct?*

6

*THE DEFENDANT: Correct.*

The Court then asked the assistant U.S. attorney to outline the plea agreement on the record, which was stated in part as follows (A48 lines 13-20):

*"The government has outlined what we believe the advisory guideline range is based upon the two counts and based upon the fact they must be consecutive and the government, if the defendant pleads now, he will get a third point for acceptance of responsibility.*
*Therefore, he faces an advisory guideline range of imprisonment of 147 to 162 months assuming he falls with criminal history category I."*

Then at A49 lines 2-7 the assistant U.S. attorney stated:

*"The defendant agrees, by this agreement, not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. 2255, also known as a habeas petition on any other provision of law, the conviction or sentence in this matter in the even that the Court imposes a term of imprisonment of 170 months or less."*

Given the language of the plea agreement and the conversations between Mr. Diaz, the Court and the assistant U.S. attorney, Mr. Diaz reasonably understood that the maximum term of imprisonment that he would receive was 13 years with a minimum of 7 years.  Additionally, from discussions with his attorney, Mr. Patrick Brackley, Mr. Diaz was led to believe that he would be sentenced toward the lower end of the range, - closer to 7 years.

*The Sentence*

On December 29, 2011 Mr. Diaz appeared before the District Court, (Feuerstein, Sandra U.S.D.J.) for sentencing. Mr. Diaz' attorney previously provided the District Court with a sentencing memorandum (A71). The District Court sentenced Mr. Diaz as follows: on count 1, 144 months of incarceration and restitution in the amount of $338,357.34 due immediately. On count 2 the District Court sentenced Mr. Diaz to seven years incarceration to run consecutive to count one with five years of supervised release with special conditions.

*The Presentence Report*

The presentence report calculated the offense level separately for each of the eight incidents; however, only six incidents were included in count 1 of the superseding indictment as stated by the assistant U.S. attorney (A41). The base offense level for violation of 18 U.S.C. §1951 was 20 points pursuant to Guideline 2X1.1 and the Guideline for robbery 2B3.1.

A four level enhancement was added pursuant to 3B1.1(a) for adjustment for role in the offense as a 4-level organizational role adjustment as the defendant was a leader in the conspiracy and it involved more than five persons. A two level enhancement was given under the robbery occurring at J&H Jewelers pursuant to Guideline 2B3.1(7)(C) because the

loss was more than $50,000 but not more than $250,000. Additionally, a two level enhancement was given under that same robbery under 2B3.1(b)(4)(B) because a victim was physically restrained to facilitate the commission of the offense. The highest offense level calculated for all of the robberies was that of the J&H Jewelers, and the total was 28 offense level points.

The presentence report mistakenly calculated the number of units under 3D1.4 Combined Offense Level as 8 units. This was an error because there were only 6 robberies contained in count 1 of the superseding indictment, not 8. Despite the mistake in the number of units counted by the presentence report, the calculation of increased offense levels of 5 was still correct.

The combined adjusted offense level then becomes 33 and then 3 offense levels were subtracted for an adjustment for acceptance of responsibility for a total offense level of 30.

In calculating the Criminal History Category the presentence report added 2 points under 4A1.19(c) for having two criminal convictions. Both of the convictions were in New York State court for misdemeanors. The first was a misdemeanor assault and the second was misdemeanor drug

possession.  For both of these misdemeanors Mr. Diaz received a sentence of a conditional discharge.

The presentence report added two additional points under 4A1.1(d) for having committed the instant offense while under the terms of the conditional discharge.  However, the conditional discharge sentences took place on May 30, 2008 and May 6, 2009.  All of the robberies, except for one, preceded the sentences on the misdemeanors.  The dates of the robberies can be found at page nine of the presentence report.

## THE AMBIGUITIES IN THE PLEA AGREEMENT COUPLED WITH THE COMMENTS MADE BY THE COURT AND THE ASSISTANT U.S. DISTRICT ATTORNEY RENDERED THE SENTENCE OF 19 YEARS CONTRARY TO THE  REASONABLE UNDERSTANDING AND EXPECTATIONS OF THE DEFENDANT

The ambiguities in the plea agreement coupled with the statements on the record made by the District Court and by the Assistant U.S. Attorney led Mr. Diaz to believe that his total sentence would be no more than 12 or 13 years.  Because of the ambiguities in the plea agreement and the misleading statements by the District Court and the Assistant U.S. Attorney, the only reasonable interpretation of what Mr. Diaz was pleading guilty to and what his sentence would be is that a sentence of no more than 12 or 13 years would be imposed by the Court and Mr. Diaz should be re-sentenced in accordance with that interpretation.

In interpreting plea agreements drafted by federal prosecutors, courts' concerns run even wider than protection of the defendant's individual constitutional rights, to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government. *United States v. Ready*, 82 F.3d 551, 558 (2d Cir. 1996) quoting *United States v. Harvey*, 791 F.2d 294, 300(4th Cir. 1986); *United States v D'Amico*, 734 F Supp 2d 321 [SDNY 2010].

In interpreting the plea agreement the Government is held to the most meticulous standards of both promise and performance regarding plea agreements. *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999); *United States v D'Amico*, 734 F Supp 2d 321 (SDNY 2010).

The ambiguity of the plea agreement and the statements made on the record to Mr. Diaz by both the District Court and the prosecuting attorney reasonably led him to believe that he would receive a sentence of no more than 12 or 13 years. Mr. Diaz asks this Court that he be resentenced to the only reasonable interpretation of the plea agreement and statements made to him by the Judge and prosecutor.

*The Terms of the Plea Agreement*

The terms of the plea agreement specifically state in two place that a collective sentence range for both counts one and two would be 154 to 171 months. (A61 and A62) The plea agreement also infers that a maximum prison sentence of 171 months may be imposed where Mr. Diaz agreed not to challenge a sentence if it were no greater than 171 months. (A62).

The fact that the plea agreement calculated an offense level of 27 with a criminal history category of I and was mistaken is of no moment because of the specific statements that the agreement made as to what the collective sentence would be in this case.

12

Mr. Diaz reasonably relied on the terms of the agreement and abided by them when he pleaded guilty to counts one and two.  The only reasonable interpretation of the plea agreement was that he would receive a collective sentence under counts one and two with a minimum of 147 months and a maximum of 171 months.

### Comments Made By The Trial Court And Assistant USDA Added To The Ambiguity Of The Agreement

The remarks prior to the plea and sentence made by the District Court and the assistant U.S. attorney led Mr. Diaz to believe that if he were to plead guilty he would receive a maximum term of 12 or 13 years.

A judge's remark at sentencing might assist interpretation of an ambiguous plea agreement.  *United States v Roitman*, 245 F3d 124, 126 [2d Cir 2001]  In *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990) the Eleventh Circuit held that the proper analysis for interpreting a plea agreement was as follows:  First, a "hyper-technical reading of the written agreement" and "a rigidly literal approach in the construction of the language," should not be accepted. Second, the written agreement should be viewed "against the background of negotiations" and should not be read to "directly contradic[t] [an] oral understanding." Third, a plea agreement that is ambiguous "must be read against the government. See also *United States v Rewis*, 969 F2d 985, 988 [11th Cir 1992].

13

The conversations had between the District Court Judge, Mr. Diaz, and the assistant U.S. attorney were completely ambiguous and led Mr. Diaz to believe that if he were to plead guilty that he would receive a sentence of 12 or 13 years.

On the March 11, 2011 court date the District Court specifically outlined for Mr. Diaz the difference between going to trial and pleading guilty:

THE COURT: *The reason is because if in fact you go to trial and if in fact you are convicted, you are facing the possibility of a term of what, Ms. Gatz?*

MS. GATZ: *Approximately 40 years.*

THE COURT: *40?*

MS. GATZ: *Yes.*

THE COURT: *40 years in jail. The government has offered you an agreement where by you would be serving between what?*

MS. GATZ: *I believe it's 12 years, 12 to 13 years.*

THE COURT: *12 to 13 years. . So that's the first thing. The reason we're discussing this now is I'm not in any way trying to dissuade you from going to trial, but I want you to understand the possible sentence that you could receive under the two circumstances; 40 years versus a maximum of 13, correct?*

*MS. GATZ: Yes, Judge.*

The District Court outright told Mr. Diaz that the maximum would be 13 years. The nature of the above conversation could reasonably be

interpreted as a promise by the District Court when it said that the maximum would be 13 years. There is no other way to interpret this because the language used by the District Court in explaining the difference between the possible outcome of a trial and the "maximum" sentence should he plead guilty.

The only reasonable interpretation of someone standing in the shoes of Mr. Diaz, given the ambiguous language in the plea agreement, along with the statements made by the District Court and the assistant U.S. attorney, is that the District Court was promising him a maximum of 13 years.

## *The Plea Agreement Must Be Interpreted Within The Concepts Of Contract Law*

The Second Circuit has recognized that the principles of contract law are applicable to plea agreements. In this case the combination of the written plea agreement and the statements made by both the District Court and the assistant U.S. attorney can be viewed as forming the basis of a maximum offer of 12 or 13 years.

We review interpretations of plea agreements *de novo* and in accordance with principles of contract law." *United States v. Riera,* 298 F.3d 128, 133 (2d Cir.2002) (citing *United States v. Padilla,* 186 F.3d 136, 139 (2d Cir.1999)). A sentence imposed pursuant to a plea agreement "must

follow the reasonable understandings and expectations of the defendant with respect to the bargained-for sentence." *United States v. Ferrara,* 954 F.2d 103, 105 (2d Cir.1992). We have observed that "[b]ecause the government ordinarily has certain awesome advantages in bargaining power, any ambiguities in the agreement must be resolved in favor of the defendant. *United States v Palladino*, 347 F3d 29, 32-33 [2d Cir 2003]

The only reasonable understanding that Mr. Diaz could have had after having read the plea agreement and had the March 11, 2011 conversation that took place with the District Court and the assistant U.S. attorney is that he was being promised a maximum of 12 or 13 years if he were to plead guilty.

*Ambiguities In The Plea Agreement Must Be Interpreted Against The Government And In Favor Of Mr. Diaz*

Courts determine whether a plea agreement has been breached by looking to the reasonable understanding of the parties, and, if there is any ambiguity, the terms of a plea agreement, like the terms of a contract, must be construed against the drafter. *United States v. Riera*, 298 F.3d 128, 133 (2d Cir.2002) *United States v. Carbone,* 739 F.2d 45, 46 (2d Cir.1984); *United States v Rodgers*, 101 F3d 247, 253 (2d Cir 1996); Or in this case the terms of the plea agreement must be resolved against the government. *United States v. Colon*, 220 F.3d 48 (2d Cir. 2000); *In re Altro*, 180 F.3d

16

372, 375 (2d Cir. 1999); *United States v. Rodgers*, 101 F.3d 247, 253 (2d Cir. 1996).

In *U.S. v. Carmichael*, 216 F.3d 224 (2d Cir. 2000) where the terms of the plea agreement were at issue as to what sentencing minimums should be applied, the Government argued that stricter statutory minimum sentence should be applied to defendant, but the Court found that the plea agreement limited the application of the agreement to the sentencing guidelines and not to statutory minimums. The court found that any ambiguities in the plea agreement must be strictly construed against the government.

In *Buckley v Terhune*, 441 F.3d 688, 698 (9th Cir. 2006) where there were conflicting terms in a plea agreement the court must adopt the construction of the agreement that is most favorable to the defendant. In that case there were conflicting terms in a plea agreement whereby one interpretation was that the defendant would receive a sentence of 15 years and the conflicting interpretation was a sentence of 15 years to life. The court interpreted the conflict in favor of the defendant and imposed a sentence of 15 years.

In this case the plea agreement in and of itself contained ambiguous terms. The agreement stated that Counts one and two "collectively" carry a range of imprisonment of 154 -171 months (A61 and A62). The fact that the

plea agreement also stated that count two must run consecutive, but then the agreement also stated that the "collective" sentence would be a range of either 154-171 months (A61) or 147-162 months (A62) renders the agreement as a minimum ambiguous. And any ambiguities in the agreement must be construed against the government.

*Mr. Diaz Is Entitled To Specific Performance Of The Agreement Under Rules Of Due Process.*

Mr. Diaz is entitled to specific performance of the plea agreement as *he* reasonably understood it. Given the wording of the agreement and the conversations had on the record with the District Court and the assistant U.S. attorney, the only reasonable interpretation is that the District Court and the U.S. Attorney's office were promising him a maximum of 12 or 13 years.

It is well established that " '[t]he remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement. *United States v. Byrd*, 413 F.3d 249, 251 (2d Cir. 2005); *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004); *United States v. Lawlor,* 168 F.3d 633, 638 (2d Cir.1999) (quoting *United States v. Brody,* 808 F.2d 944, 947 (2d Cir.1986)); *see also United States v. Alexander,* 869 F.2d 91, 94 (2d Cir.1989).

The choice between these remedies is generally "a discretionary one guided by the circumstances of each case." *Palermo v. Warden, Green*

*Haven State Prison,* 545 F.2d 286, 297 (2d Cir.1976) (citing *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). *United States v Palladino*, 347 F3d 29, 34 [2d Cir 2003].

Remedy is required "where the violation of an agreement goes to the very 'essence' of the plea agreement. *United States v Vaval*, 404 F3d 144, 154 [2d Cir 2005]. However, specific performance is the preferred remedy rather than a withdrawal of the plea. *United States v. Kurkculer*, 918 F.2d 295, 300 (1st Cir. 1990); *Margalli-Olvera v. I.N.S.*, 43 F.3d 345, 355 (8th Cir. 1994); *United States v. Canada*, 960 F.2d 263, 271 (1st Cir. 1992) noting that the First Circuit's preference for specific performance of plea agreements by sentencing before a different judge rather than vacating the plea; *United States v. Badaracco*, 954 F.2d 928, 941 (3rd Cir) noting that where the defendant had served a considerable portion of the sentence that specific performance was the only adequate remedy; *United States v. Shelton*, 179 Fed.Appx. 809 (3rd Cir) noting that where defendant did not want to withdraw his plea the appropriate remedy is specific performance; *United States v. VanDam*, 493 F.3d 1194, 1206 (10th Cir. 2007) noting that specific performance was remedy and that defendant may only withdraw a guilty plea when breach of the plea agreement is particularly egregious or intentional.

In determining whether to grant specific performance, the court should consider (1) the possible prejudice to the defendant, (2) the conduct of the government, and (3) the public interest. *United States v. Walker,* 927 F.2d 389, 391 (8th Cir. 1991). Of these factors, prejudice to the defendant is the most important. *Margalli-Olvera v I.N.S.,* 43 F3d 345, 355 [8th Cir 1994] quoting *United States v. McGovern*, 822 F.2d 739, 746 (8th Cir. 1987).

The majority of Circuits hold that the specific performance remedy is the preferred one.   Additionally, one of the most important factors to consider in deciding whether to grant specific performance is the possible prejudice to the defendant.

In this case Mr. Diaz reasonably understood that an offer was being made of a  maximum of 12 or 13 years.  The prejudice to him is evident in the excessive sentence of the District court of 19 years (228 months). Additionally, it would be highly prejudicial to vacate the conviction and force Mr. Diaz to go to trial, especially because Mr. Diaz is not asking the Second Circuit to vacate the conviction, but he only asks for specific performance of the promise that was made to him – a maximum of 12 or 13 years.

<u>THE ADDITION OF TWO OFFENSE LEVEL POINTS FOR RESTRAINT
UNDER 2B3.1(b)(4)(B) WAS INAPPROPRIATE, INAPPLICABLE AND
EXCESSIVE AS MR. DIAZ WAS NOT PRESENT DURING THE
ROBBERY AND DID NOT RESTRAIN ANYONE OR PARTICIPATE IN
THE RESTRAINT OF ANYONE</u>

The presentence report wrongfully added two offense level points

under 2B3.1(b)(4)(B) stating that *as the victim was physically restrained to*

*facilitate commission of the instant offense, a 2-level enhancement, per*

*Guideline 2B3.1(b)(4)(B) is warranted.*

However, cases in this Circuit and all other Circuits are

distinguishable from the facts of this case. Here, Mr. Diaz was not

physically present at the robbery, but was convicted by plea of conspiring to

commit these robberies by supplying a gun. The addition of two offense

levels for actions that he did not take and while he was not physically

present were not foreseeable by him and are not consistent with

2B3.1(b)(4)(B) or the case law interpreting this section of the Guidelines.

The offense level enhancement under 2B3.1(b)(4)(B) was designed,

and has been applied, as an enhanced punishment for restricting victims'

freedom of movement either by force or threat of force. All of the cases in

the Second Circuit have held that the 2 point enhancement under

2B3.1(b)(4)(B) was appropriate only where the defendant physically

participated in some type of restraint or was physically present and complicit in the restraining activity of a coconspirator.

Generally speaking, this Circuit has held that the two point enhancement was appropriate where the restraint was physical and committed by the defendant. See *United States v. Rosario*, 7 F.3d 319 (2d Cir. 1993) where defendant stepped on the victim's throat and stole his wallet;

Conversely, and consistent with the facts of this case, the Second Circuit held in *United States v. Anglin*, 169 F.3d 154 (2d Cir. 1999) that pointing a gun and telling people to get down and not move, without more, is insufficient to trigger the physical restraint enhancement.

In other Circuits it has been held that the two point enhancement for restraint was sufficient when a coconspirator committed some act of restraint, but in all of those cases the defendant receiving the enhancement was physically present and, thereby, demonstrated his complicity with the acts of restraint.

In *United States v. Fisher*, 132 F.3d 1327 (10th Cir. 1997) the Tenth Circuit held that the two point enhancement was appropriate where a coconspirator struck a security guard and then restrained him by holding the gun to his head for a period longer than it took to strike him. However, the

*Fisher* case is distinguishable from this case in that the defendant that received the two point enhancement, due to the actions of his coconspirator, was physically present and complicit with the actions of his coconspirator. In this case, Mr. Diaz was not physically present and had no way of foreseeing any action of restraint by his coconspirators.

Similarly, in *United States v. Wallace*, 461 F.3d 15 (1st Cir. 2006) the First Circuit held that the defendant and his coconspirator physically restrained the victims when coconspirator jumped in front of a victim to prevent her escape. Again, the defendant was physically present and complicit in the acts of restraint, which distinguishes it from this case because Mr. Diaz was not physically present and did not participate in the physical acts of restraint.

Additionally, there seems to be a split of authority among the Circuits as to whether pointing a gun at someone is a form of physical restraint that warrants the two point enhancement under 2B3.1(b)(4)(B). Several Circuits have found pointing a gun sufficient for the enhancement, see *United States v. Wilson*, 198 F.3d 467 (4th Cir. 1999); *United States v. Hayes*, 399 Fed.Appx. 57 (6th Cir. 2010); *United States v. Fisher*, 132 F.3d 1327 (10th Cir. 1997), while other Circuits have found that a threat at gunpoint is not

itself physical restraint. See *United States v. Drew*, 200 F.3d 871 (D.C. Cir. 2000); *United States v. Anglin*, 169 F.3d 154 (2d Cir. 1999).

Finally, in *United States v. Vigers*, 220 Fed.Appx. 265 (5th Cir. 2007) the Fifth Circuit held that where the defendant was personally involved in the robbery and victims were restrained by coconspirators the two point enhancement was appropriate.

All of the above mentioned cases where the two point enhancement was found appropriate are distinguishable from this case. Mr. Diaz was not physically present at the robberies where the restraints took place and there are no cases in the Second Circuit that have found that a defendant warrants a two point enhancement where the defendant was not physically present.

*The Acts Of Mr. Diaz' Coconspirators Were Not Reasonably Foreseeable*

United States Sentencing Guideline §1B1.3(a)(1)(B) states in pertinent part that in the case of a jointly undertaken criminal activity, a defendant's offense level shall be determined based upon all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

However, the acts of restraint in this case were not reasonably foreseeable as Mr. Diaz, as allocuted during his plea, planned the robberies

and supplied the gun, but did not plan or even suggest that anyone should be restrained in any manner.

The application notes of the Guidelines state that "*because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant is not necessarily the same as the scope of the entire conspiracy and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e. the scope of the specific conduct and objectives embraced by the defendant's agreement).* U.S.S.G. 1B1.3 Application Notes 2.B

In this case the conduct of restraint of coconspirators was not reasonably foreseeable as it was not part of the plan as per Mr. Diaz' allocution at the plea and because he was not physically present when these acts took place.

<u>A CRIMINAL HISTORY CATEGORY OF III WAS EXCESSIVE IN THIS CASE BECAUSE A TOTAL OF FOUR CRIMINAL HISTORY POINTS OVERREPRESENTS THE DEFENDANT'S PAST CRIMINAL HISTORY AND MR. DIAZ SHOULD HAVE BEEN A CRIMINAL HISTORY CATEGORY II.</u>

The presentence report calculated the criminal history points of Mr. Diaz by adding two points for past sentences pursuant to U.S.S.G. §4A1.1(c) and added two additional points pursuant to U.S.S.G. §4A1.1(d) because the instant offense was committed while Mr. Diaz was serving a conditional discharge for two misdemeanors.

The Criminal History Category of III over represents the seriousness of Mr. Diaz' Criminal History Category should be reduced to a Category II. In the Application Notes to U.S.S.G. §4A1.3 note 3 *Downward Departures* it states that *A downward departure from the defendant's criminal history category may be warranted if , for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.*

In this case Mr. Diaz had two misdemeanor convictions, one for misdemeanor assault for which he received a sentence of a conditional discharge and a misdemeanor drug possession for which he also received a conditional discharge.  Both of these crimes that he pleaded guilty to were misdemeanors and he received no jail sentence and no sentence of probation.

26

The conditional discharge is the lightest sentence possible under the New York Penal Law because it includes no supervision and no jail time.

The Second Circuit has recognized that a downward departure may be warranted where the Criminal History Category overrepresents the past criminal history of the defendant. Section 4A1.3 of the Guidelines grants sentencing courts the discretion to depart where the criminal history calculation overstates the seriousness of a defendant's criminal record. See *United States v. Rivers*, 50 F.3d 1126, 1130 (2d Cir.1995); *United States v. Fiacco*, 48 Fed.Appx. 356, 357 (2d Cir. 2002).

The fact that the sentence imposed on prior misdemeanor charges were conditional discharges has been considered a factor in downward departures from a Criminal History Category that overrepresents the seriousness of a defendant's past criminal history. *United States v. DeJesus*, 75 F.Supp.2d 141, 144 (S.D.N.Y. 1999).

In this case the presentence report added four additional points to Mr. Diaz' Criminal History and that put him into a Criminal History Category of III when generally two prior convictions would put him in a Criminal History Category of II.

Furthermore, the additional points for commission of the present crimes while under a sentence makes the Criminal History Category here

excessive because of all the robberies that Mr. Diaz is accused of only one was committed while he was under the sentence of a conditional discharge (i.e. the July 6, 2009 robbery of a cigarette wholesaler and vehicle); all other crimes occurred prior to the commencement of the sentences of conditional discharge on the misdemeanors.

The defense posits that the Criminal History Category of III was excessive and overrepresents the seriousness of Mr. Diaz' prior criminal history and this case should be remanded for resentencing with a Criminal History Category of II imposed.

## THE SENTENCE IMPOSED ON CESAR DIAZ WAS UNREASONABLE AND DISPROPORTIONATELY HIGHER THAN THE SENTENCES RECEIVED BY SIMILARLY SITUATED CO-DEFENDANTS

The sentence imposed by the District Court was unreasonable because Mr. Diaz' sentence was considerably longer than that of his co-defendants, and was greater than necessary in light of the factors set out in 18 U.S.C. § 3553(a).

One of the co-defendants, Jose Ramon Diaz (defendant's brother) had pleaded to the exact same counts as Mr. Cesar Diaz i.e. counts 1 and 2 of the superseding indictment. On count 1 Jose was sentenced to 26 months, where as Cesar was sentenced to 144 months and on count 2 both Jose and Cesar were sentenced to 84 months to run consecutively with the sentence on count 1. Jose's total sentence was 110 months and Cesar Diaz' total sentence was 228 months. Mr. Cesar Diaz' sentenced was more than double (or 118 months greater than) his similarly situated co-defendant.

Title 18 U.S.C.A. § 3553(a) reads, in pertinent part: ***Factors to be considered in imposing a sentence***.--*The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--(6) the need to avoid*

*unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.*

In this case the District Court mentioned several of the 3553(a) factors that it took into consideration, but did not mention that it considered 3553(a)(6). (A81-82) The District Court did not adequately address or consider 18 U.S.C. 3553(a)(6) when sentencing Mr. Diaz, and the sentence was therefore unreasonable in light of 3553(a) and case must be remanded for resentencing.

The U.S. Supreme Court in *Gall v. U.S.*, 552 U.S. 38, 128 S.Ct. 586 (2007) held that the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. *Gall v United States*, 552 US 38, 49-50, 128 S Ct 586, 596-97, 169 L Ed 2d 445 [2007].

The Court of Appeals reviews sentences imposed after *Booker* for reasonableness, even when these sentences are within the Guidelines ranges.

U.S.S.G. § 1B1.1 et seq. *United States v Marcial-Santiago*, 447 F3d 715, 717 [9th Cir 2006].

In reviewing a sentence for reasonableness, the Court of Appeals considers whether the district court accurately calculated the Guidelines range and, if it did, whether the sentence is reasonable in light of the statutory sentencing factors. 18 U.S.C.A. § 3553(a). *United States v Marcial-Santiago*, 447 F3d 715, 717 [9th Cir 2006]; *United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008) holding that appellate court reviews judgment of sentence for reasonableness under an abuse of discretion standard, citing *Gall v. United States*, *supra*; see also *United States v. Williams*, 524 F.3d 209, 214 (2d Cir. 2008).

In this case the District Court did not calculate the guidelines and did not consider all the 18 U.S.C. 3553(a) factors, especially 3553(a)(6) – the need to avoid unwarranted sentence disparities among defendants. Given the large disparity, even discounting the leadership role and different criminal history categories in this case, the District Court' sentence was unreasonable in light of 18 U.S.C. § 3553(a).

Where a sentencing court did not utter one word with regard to how the sentence it imposed would or might avoid sentencing disparities among federal defendants it was found that the court did not sufficiently consider 18

U.S.C. § 3553(a)(6) and the case was remanded for resentencing. *United States v. Clark*, 434 F.3d 684 (4th Cir. 2006)

The District Court stated that it sentenced Mr. Diaz toward the higher end of the Guidelines range because of the nature of the crime and because of his leadership role. (A83)  Considering the disparity in sentences with his codefendants, who committed crimes of the same nature, the District Court's sentence imposed upon Mr. Diaz was unreasonably disproportionate, even if the leadership role and criminal history category were discounted.

Allowing for the factors that might distinguish the two co-defendants here, Cesar Diaz' sentence was still disproportionately higher than a similarly situated co-defendant.  For example, even if we were to subtract the additional 4 points that Cesar Diaz received for his leadership role in this case, his adjusted offense level would have been a 26. The District Court cited Mr. Diaz' leadership role as an important factor in its decision to sentence him higher in the range (A83).  With a Criminal History Category of III his range under the Guidelines would have still been unfairly disproportionate to his co-defendant at 78 to 97 months on count one alone, plus the mandatory consecutive 84 months for count 2 would yield a minimum sentence of 84 months + 78 months = 163 months as a minimum

at the lowest end of the range (compare to the 110 months sentence received by Jose Ramon Diaz).

Furthermore, if we were to hypothetically reduce Mr. Cesar Diaz to a Criminal History Category of I with the same offense level of 26 (reduced in this hypothetical for no leadership role) his range under the Guidelines would still be disproportionately high at 63 to 78 months and then the mandatory consecutive 84 months added to that yielding a minimum Guideline sentence of $63 + 84 = 147$ months as a minimum at the lowest end of the guidelines range (compare to the 110 months sentence received by Jose Ramon Diaz).

In any number of configurations, real or hypothetical, Mr. Cesar Diaz' sentence was unreasonably disproportionate to  that of a similarly situated co-defendant in light of 3553(a)(6).

Additionally, another of Mr. Diaz' co-defendants, Karon Deopersaud, was sentenced to 33 months on the robbery charges and 84 months on the brandishing a gun charge, for a total of 117 months incarceration.  Again, even allowing for the leadership role and different Criminal History Categories as outlined above, Mr. Diaz sentence was unreasonable disproportionate in light of 3553(a)(6).

Furthermore, Mr. Diaz' other codefendants received sentences as follows: Mr. Arcesio Maurath was sentenced to 1 day in custody and 2 years supervised release; Mr. Keilyn Hernandez was sentenced to 24 months incarceration; Mr. Rudolpho Garcia was sentenced to 48 months incarceration; and four other co-defendants are awaiting sentence according to the presentence report issued on September 27, 2011.

Mr. Diaz' sentence was unreasonable in light of 3553(a) factors in that it was unreasonable and disproportionately higher than that of all similarly situated co-defendants.

<u>CONCLUSION</u>

In light of the ambiguities in the plea agreement, the statements made by the District Court and the assistant U.S. attorney, the wrongfully apportioned offense level points, the overestimated criminal history categorization, Mr. Diaz' case should be remanded for resentencing in accordance with the terms of a reasonable understanding of what the sentence would be, i.e. specific performance of the sentence should be given to Mr. Diaz.

Dated: September 17, 2012

STEPHEN N. PREZIOSI
*Attorney for Defendant-Appellant*
570 Seventh Avenue, 6th Floor
New York, New York 10018
(212) 300-3845

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 6,766 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

Dated:  September 17, 2012